# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM R. SHEPPARD, *et al.*, | ) | CASE NO. 5:18cv2832 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| vs. | ) | |
| | ) | |
| TAI-CHI KWOK, *et al*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiffs, William R. Sheppard and Victoria Sheppard, filed this action under 18 U.S.C. §§ 241 and 242, and the Fair Housing Act, 42 U.S.C. § 3604 against defendants, Tai-Chi Kwok and Lee Kwok. They also include state law claims for false accusation of criminal activity, defamation of character, and intentional infliction of emotional distress. In the complaint, the Sheppards allege the Kwoks had them arrested and prosecuted after they, without authorization, entered a house that the Kwoks had listed for sale.(Doc. No. 1 (Complaint ["Compl."]).) The Sheppards contend the Kwoks discriminated against them in the sale of their house on the basis of race and disability, and falsely accused them of committing a crime. They seek monetary damages. (*Id.* at 24.[1])

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

The Kwoks filed a motion for summary judgement asserting the Sheppards' claims fail as a matter of law. (Doc. No.10 ["MSJ"].) First, they contend they did not discriminate against the Sheppards in the sale of their home. They state they did not refuse to show the home to the Sheppards through proper channels and the Sheppards did not submit an offer to purchase the property. Second, they assert the Sheppards cannot proceed under 18 U.S.C. §§ 241 and 242, as these are criminal statutes and do not apply in a civil action. Third, they deny they made untruthful statements needed to support claims of false accusations and defamation. They state the Sheppards were not authorized to be on the property and the criminal charges against them for trespass were based on truthful statements. Finally, the Kwoks contend that any emotional distress the Sheppards suffered was a result of their own actions, not those of Christine Lee-Kwok. They further assert that Lee-Kwok's reaction of becoming angry and reporting the repeated trespasses to the police was not extreme or outrageous conduct needed to state a claim for intentional infliction of emotional distress. Plaintiffs did not oppose the motion. For the reasons stated below, defendants' summary judgment motion is granted, and this action is dismissed.

**I.    BACKGROUND**

In June 2018, the Kwoks listed their residence at 5610 Appian Way, Sharon Center, Ohio for sale with Keller Williams real estate agent Daniela Margos. The asking price for the house was $1,795,000.00. The Kwoks had purchased a house down the street in the same neighborhood and had relocated to their new residence, leaving some furnishings and personal items in the house listed for sale. The Sheppards toured the home on June 7, 2018, accompanied by their real estate agent. However, they did not make an offer to purchase the house after the tour. (MSJ at 92.)

The Kwoks, through Margos, held an open house in July 2018. The Sheppards attended the open house. Through their real estate agent, the Sheppards informed Margos that they were cash buyers and submitted a letter purporting to substantiate means to purchase a home valued at $1,800,000.00. (*Id.*). Despite this conversation between realtors, the Sheppards did not make an offer to purchase the house.

On August 25, 2018, the Sheppards returned to the house to view the property, this time without an appointment. They indicate they were on their way to Cleveland to celebrate Victoria Sheppard's birthday and decided to take another look at the house. They pulled around to the back of the house and let themselves in through an unlocked back door. Victoria Sheppard sat down at the kitchen island while her husband went down to the basement to look around, contending he had seen peeling wall paper and a humidifier on their first two visits and wanted to inspect for mold. (Compl. at 7-8.)

Tai-Chi Kwok stopped by to check on the house at 2:00 p.m. He entered the driveway and drove to the garage doors, which are located behind the house. There he discovered a maroon Mazda CX9. Although he was not expecting anyone to be there, he initially thought it belonged to a woman who was working on the house. When he entered the house, however, he discovered Victoria Sheppard sitting in the kitchen. She informed him that her husband was inspecting the house. Tai-Chi Kwok found William Sheppard, and Sheppard explained he was inspecting the property. (MSJ at 92.) He showed Kwok what he believed to be mold. Kwok indicated the cost to correct any potential mold problems could be negotiated into the final price and invited Sheppard to make an offer. (Compl. at 8-9.) The Sheppards declined to make an offer and left without incident. Tai-Chi Kwok filed a report of the incident at the Medina County Sheriff's Department

the following day. Although he declined to press charges, he found the incident troubling and wanted it to be documented in the event something later occurred. (MSJ at 93.)

Six days later, on August 31, 2018, the Sheppards again returned to the Appian Way house without an appointment and unaccompanied by either their real estate agent or Margos. They indicate Victoria Sheppard wanted to look at the outside of the house and to pray over it. (Compl. at 10.) Christine Lee-Kwok was driving down the street and saw the Sheppard's car pull into the driveway of the Appian Way house. She pulled her car in behind Sheppard's car. Victoria Sheppard got out of her car and approached Christine Lee-Kwok who was still in her vehicle. After Sheppard introduced herself, Lee-Kwok asked Sheppard why she was at the house and Sheppard replied that she and her husband wanted to look at it again. Lee-Kwok informed Sheppard that she and her husband were trespassing, and she was calling the police.(MSJ. at 93.) A heated discussion ensued, with Lee-Kwok reiterating that the Sheppards were trespassing and she was going to call the police. (Compl. at 11-12.) William Sheppard asked his wife to get back in the car, which she did, and they immediately left the property. Lee-Kwok photographed the Sheppards' license plate and emailed that photograph to the Medina County Sheriff's Department. A deputy informed the Kwoks that they would review both reports and determine how to proceed. (MSJ at 94.)

The Medina County Sheriff's Office conducted its own investigation into the matter and in conjunction with the Medina County prosecutor's office decided to charge the Sheppards each with two counts of trespass. A bench trial was conducted on December 17, 2018. At the conclusion of testimony, the judge convicted both Sheppards of two counts of trespass. Each was fined $100.00 and assessed court costs.(MSJ, Ex. C.)

In their complaint, the Sheppards contend the Kwoks discriminated against them in the sale of their home on the basis of their race and Victoria Sheppard's disability. They claim that Tai-Chi Kwok never told them to leave and did not tell them they were not welcome on the property at all. (Compl. at 9.) After their second unscheduled visit to the home and their encounter with Christine Lee- Kwok, the Sheppards claim they determined that "as Black people they were no longer allowed to view the luxurious property." (*Id*.at 11.) They indicate Christine Lee-Kwok "made it clear she did not want Black or disabled people on her property, or look at, considering purchase of her house." (*Id*. at 12.) Plaintiffs contend they came to this conclusion because the Kwoks called the police after they introduced themselves and left the property. They assert claims for housing discrimination under the Fair Housing Act ("FHA"), deprivation of rights under 18 U.S.C. §§ 241 and 242, false accusation of burglary, defamation of character, and intentional infliction of emotional distress.(Compl.at 13-22.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment must initially demonstrate that there is an absence of a genuine issue of material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d (1986). Once the moving party meets this burden, to survive summary judgment, the party opposing the motion must produce admissible evidence – not merely allegations or denials in pleadings – demonstrating a triable issue. *See* FED.

R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Rule 56 does not require that discovery be closed, or that there be any discovery, before a court rules on a motion for summary judgment. *See* FED. R. CIV. P. 56(b) ("a party may file a motion for summary judgment at any time until 30 days after the close of all discovery"); *Jefferson v. Chattanooga Publ'g Co.*, 375 F.3d 461, 463 (6th Cir. 2004) ("it is well-established that a motion for summary judgment may be filed prior to discovery"). Ruling on a summary judgment motion may be improper where the nonmoving party has not had sufficient time to engage in discovery. *Jefferson*, 375 F.3d at 463. However, if the nonmoving party claims an inability to present facts essential to oppose a motion for summary judgment, it is the nonmoving party's burden to "show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *See* FED. R. CIV. P. 56(d); *Jefferson*, 375 F.3d at 463.

### III. ANALYSIS

#### A. Fair Housing Act

The Sheppards first claim the Kwoks discriminated against them on the basis of race and disability in violation of the FHA. The FHA makes it unlawful:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604. Amendments to the FHA in 1988 extended its protections to disabled persons. 42 U.S.C. § 3604(f)(2).

Housing discrimination claims under the FHA are analyzed under the three-part, evidentiary burden-shifting standard first developed by the Supreme Court in the employment discrimination context, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and subsequently adapted to fair housing claims. *Selden v. United States Dep't. of Hous. & Urban Dev.*, 785 F.2d 152, 160 (6th Cir. 1986). Under the *McDonnell Douglas* standard, a plaintiff must overcome an initial burden of establishing a *prima facie* case of housing discrimination. *Lindsay v. Yates*, 578 F.3d 407, 414-15 (6th Cir. 2009); *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634 (6th Cir. 2000). If a plaintiff is successful, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the adverse housing decision. *Yates*, 578 F.3d at 415; *Mencer*, 228 F.3d at 634. Finally, if the defendant is successful, the burden reverts back to the plaintiff to show that the proffered reason is a mere pretext for unlawful discrimination. *Yates*, 578 F.3d at 415; *Mencer*, 228 F.3d at 634.

A plaintiff may establish a *prima facie* case of discrimination by presenting direct evidence of intentional discrimination by a defendant, or in the alternative, may demonstrate circumstantial evidence which creates an inference of intentional discrimination. *Yates*, 578 F.3d at 415. In the Sixth Circuit, a *prima facie* case of housing discrimination arises when a plaintiff shows that: (1) he or she is a member of a racial minority or a disabled individual; (2) he or she applied for and was qualified to purchase certain property or housing; (3) he or she was rejected; and (4) the housing remained available thereafter. *Id.*; *Mencer*, 228 F.3d at 634-35. *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012)(applying the standard for disability discrimination under FHA). This four-factor test is "not inflexible." *Yates*, 578 F.3d at 416. Satisfaction of its requirements creates an inference of discrimination "only because we presume these acts, if

otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978). The key question the Court must decide is "whether the plaintiffs have 'presented sufficient evidence to permit a reasonable jury to conclude [they] suffered' an adverse housing action 'under circumstances giving rise to an inference of unlawful discrimination.' " *Yates*, 578 F.3d at 416 (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 524, 529 (6th Cir. 2007) (alteration in original)).

In this case, the Sheppards failed to allege sufficient facts to make a *prima facie* case of housing discrimination. They do not present direct evidence of discrimination, leaving the Court to turn to the four-part test to determine if the Sheppards demonstrated a prima facie case of housing discrimination under FHA. They assert two bases for discrimination: race and disability. The Sheppards indicate they are African American, which satisfies the first part of the test with respect to their racial discrimination claim. They, however, do not provide any indication of the nature of Victoria Sheppard's disability. They list a number of health problems that Victoria Sheppard has experienced in the last two years, including "four brain aneurysms and a stroke, vessels behind her eyes also bursting and having two stints placed to keep both kidneys from failing… ." (Compl. at 7-8.) Not every medical condition will qualify as a disability under the FHA. The statute defines a disability as "a physical or mental impairment which substantially limits one or more of such person's major life activities," or "being regarded as having such an impairment." 42 U.S.C.A. § 3602 (h)(1) and (3). While Victoria Sheppard may not be in the best of health, she gives no indication in the complaint that any of her conditions meet the statutory definition of a disability. Moreover, there are also no allegations in the complaint that suggest her

8

medical conditions would have been apparent to either of the Kwoks for them to regard her as having an impairment. Their claim for discrimination on the basis of disability fails at the outset.

Furthermore, the Sheppards did not demonstrate disparate treatment either in terms of race or disability. The Kwoks did not refuse to show them the home through proper channels. The Sheppards were able to tour the home with their realtor and attended an open house. They do not allege they requested an additional showing with their realtor and were refused. Moreover, they did not make an offer to purchase the home. Instead, they base their claim on the fact that the Kwoks filed a police report and pursued charges against them for entering the house without permission, and entering onto the property without permission. They do not suggest that either nondisabled or Caucasian potential buyers were permitted to enter the house or grounds without authority. The Sheppards have not met their burden to establish racial or disability discrimination under the FHA.

  2. <u>18 U.S.C. §§ 241 and 242</u>

The Sheppards also assert claims under 18 U.S.C. §§ 241 and 242. These statutes are criminal statutes. In federal court, criminal charges are brought by the United States Attorney. These statutes do not provide a private right of action. *U.S. v. Oguaju*, No. 02-2485, 2003 WL 21580657, at *2 (6th Cir. July 9, 2003); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.1994). These claims are subject to summary dismissal.

  3. <u>Defamation and False Accusation Claims</u>

Next, the Sheppards assert claims for defamation and false accusations of criminal activity. Defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business. *Sweitzer*

9

*v. Outlet Communications, Inc*., 726 N.E.2d 1084, 1088 (Ohio Ct. App. 1999). The key element of a defamation claim is a false statement by the defendant. *Celebrezze v. Dayton Newspapers, Inc*., 41 535 N.E. 2d 755, 759 (Ohio Ct. App. 1988). The Sheppards' defamation claims are based on the premise that the Kwoks falsely reported to police that the Sheppards were engaged in criminal conduct when they entered the house without permission and entered the grounds a second time, again without permission. The Sheppards were convicted of trespass charges, stemming from these incidents, rendering any statements of criminal conduct to the police to be true statements. Without a false statement, the defamation and false accusation claims fail as a matter of law.

      4.      <u>Intentional Infliction of Emotional Distress</u>

Finally, the Sheppards assert claims for intentional infliction of emotional distress against Christine Lee-Kwok for her response to the Sheppards' unauthorized presence at the house on a second occasion. They contend Lee-Kwok was ranting uncontrollably, speaking rudely to Victoria Sheppard, not allowing Sheppard to speak, and threatening to call the police.

The standard adopted by the Ohio Supreme Court for a claim of intentional infliction of emotional distress requires the Sheppards to plead and prove: (1) Lee-Kwok intended to cause emotional distress or knew or should have known that her conduct would result in serious emotional distress to Victoria Sheppard; (2) Lee-Kwok's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) Lee-Kwok's conduct was the proximate cause of Sheppard's psychic injury; and (4) Victoria Sheppard's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Kovac v. Superior Dairy, Inc*. 930 F. Supp. 2d

857, 870 (N.D. Ohio 2013) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008)); *see Yeager v. Local Union 20.*, 453 N.E.2d 666, 671 (Ohio 1983) (overruled on other grounds by *Wellington v. Weinfeld*, 866 N.E. 2d 1051 (Ohio 2007)). The Ohio Supreme Court, however, distinguished between outrageous and extreme conduct, and conduct that is merely rude, insulting or threatening. The court stated:

> the liability [for intentional infliction of emotional distress] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Yeager,* 453 N.E. 2d at 671 (quoting Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033, 1053 (1936)). .

The conduct the Sheppards describe does not meet the standard to state a claim for intentional infliction of emotional distress. They contend Lee-Kwok spoke angrily and rudely to Victoria Sheppard and threatened to call the police. Simply because a property is vacant, unoccupied, and staged for sale does not mean that it is open to the public at any time without an appointment. The absence of no trespassing signs does not support the inference that trespass is welcome. The Sheppards have not demonstrated that Lee-Kwok's behavior was extreme and outrageous extending beyond the bounds of decency, particularly in light of the circumstances of finding the Sheppards back at her home for a second time without a scheduled appointment. They have not suggested a plausible claim for intentional infliction of emotional distress.

## IV. Conclusion

For all the foregoing reasons, defendants' motion for summary judgment (Doc No. 10) is GRANTED, and this action is DISMISSED.

**IT IS SO ORDERED**.

Dated: July 9, 2019

_____
**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**